Filed 11/29/21  P. v. White CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br>v.<br><br>TERRANCE LAMONT WHITE,<br>        Defendant and Appellant. | A158708<br><br>(San Mateo County Super.<br> Ct. No. 18-NF-013021-A) |

Defendant Terrance Lamont White appeals from the trial court's imposition of a four-year sentence for one count of theft of personal identifying information with a prior conviction under a negotiated disposition of his case.  The court imposed this sentence based on its conclusion that White had violated his plea agreement by willfully failing to appear at his February 2019 sentencing hearing as he had promised under a *Cruz* waiver.[1]  White argues the trial court erred in finding that he *willfully* failed to appear because the only support for it, the prosecutor's representation at the

---

[1]  A *Cruz* waiver, named for *People v. Cruz* (1988) 44 Cal.3d 1247 (*Cruz*), is an agreement by the defendant that if he or she is released from custody after the trial court accepts a plea, but before sentencing, the defendant promises to not commit other crimes and to appear for the sentencing hearing or potentially face the maximum term sentence for the crimes pleaded to regardless of the plea agreement.  (*People v. Vargas* (2007) 148 Cal.App.4th 644, 646; *Cruz*, at p. 1254, fn. 5.)

1

sentencing hearing that White was not listed in an online database as being in custody in Alameda County, contrary to the suggestion of White's counsel, was merely an attorney's statement and not evidence that the court could legally rely on for its finding.[2]  We disagree and affirm.

## BACKGROUND

In November 2018, the San Mateo County District Attorney filed an information charging White with one count of theft of personal identifying information with a prior conviction (Pen. Code, § 530.5, subd. (c)(2)[3]), one count of bringing contraband into jail (§ 4573, subd. (a)) and two counts of giving false information to a police officer (§ 148.9, subd. (a)).  Soon thereafter, White agreed to plead no contest to theft of identifying information with a prior conviction in exchange for a maximum sentence of 32 months.  After accepting White's plea, the trial court found him guilty of the count and dismissed the remaining counts.

After White waived his rights under *Cruz*, *supra*, 44 Cal.3d 1247 (which the court indicated was referred to in San Mateo County as a "Kemp O.R.") on his plea declaration form, the court granted him release on his own recognizance so he could attend his mother's funeral.  Consistent with a *Cruz* waiver, the court told White that, should he fail to return for his sentencing hearing, his plea deal would be "off the table" and he could be sentenced for up to six years.

---

[2]  The People do not argue that White has forfeited his claim by failing to first object below.  Therefore, we address its merits.  Indeed, when White finally did appear for sentencing in September 2019, he failed to produce any evidence that he was absent from the February 2019 sentencing hearing because he was in custody in Alameda County or because of some other reason beyond his control.

[3]  Statutory references are to the Penal Code unless otherwise stated.

White did not appear for his February 2019 sentencing hearing. At the hearing, White's attorney represented to the court that he had "received a telephone call, a couple days after you released [White], from somebody, I don't know who, that said that he had been in attendance at his mother's funeral. And then he was arrested on a probation violation in Alameda County arising out of this case." The district attorney responded that, "looking at the Alameda County jail inmate locator, it didn't have any return for the defendant." Based on the prosecutor's representation, the court found that White "is not in custody in Alameda. He was aware of today's date for sentencing looking at the judge's face sheet from December 28th. . . . So no excuse for showing—for lack of appearance."[4]

In September 2019, the court sentenced White to the mid-term of two years doubled because of a prior strike for a total prison term of four years. The court found it "significant, although there was a 32-month top [agreed to in the plea deal], the defendant did violate the Kemp O.R., what is known in the rest of the state as a Cruz waiver, in failing to appear for sentencing . . . ." The court also noted that White had had previous opportunities to correct his

---

[4] The minute order from the hearing states that the "Kemp O.R. revoked" because White failed to appear as a result of being "in custody in Alameda County." Given the court's statements at the hearing, it is clear the minute order is in error; in any event, the court's oral finding controls. (See *People v. Farrell* (2002) 28 Cal.4th 381, 384, fn. 2 [oral pronouncement of judgment "controls over the clerk's minute order"]; *People v. Zackery* (2007) 147 Cal.App.4th 380, 385 ["Where there is a discrepancy between the oral pronouncement of judgment and the minute order . . . , the oral pronouncement controls"].)

behavior and had not corrected it as indicated by his criminal and probation history.  It awarded him credits and imposed certain fines and fees.

White filed a timely notice of appeal.[5]

## DISCUSSION

As we have discussed, under a *Cruz* waiver, a defendant who pleads guilty or no contest may waive the right to be sentenced pursuant to the plea agreement and agree to a greater sentence as a sanction for, among other things, failing to appear at a sentencing hearing.  (*Cruz*, *supra*, 44 Cal.3d at p. 1254, fn. 5; *People v. Masloski* (2001) 25 Cal.4th 1212, 1219-1224.)  Before the trial court can impose the sanction of a greater sentence, it must first find the defendant *willfully* violated a term of the *Cruz* waiver.  (*Cruz,* at p. 1254, fn. 5; *Masloski*, at p. 1221.)

"The terms 'willful' or 'willfully,' as used in penal statutes, imply 'simply a purpose or willingness to commit the act . . . .'  The terms imply that the person knows what he is doing, intends to do what he is doing, and is a free agent."  (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1438; *People v. Atkins* (2001) 25 Cal.4th 76, 85 [" '[T]he terms "willful" or "willfully," when applied in a penal statute, require only that the illegal act or omission occur "intentionally," without regard to motive or ignorance of the act's prohibited character' "]; § 7(1) [as used in the Penal Code, "[t]he word 'willfully . . . implies simply a purpose or willingness to commit the act or make the

_____

[5] In filing his appeal, White did not obtain a certificate of probable cause under section 1237.5.  He argues he did not need one because his appeal raises post-plea claims that do not challenge his plea's validity.  The People do not disagree.  White is correct.  (See *People v. Buttram* (2003) 30 Cal.4th 773, 780 [no certificate needed to appeal from proceedings held subsequent to the plea for the purpose of determining the penalty to impose]; *People v. Rabanales* (2008) 168 Cal.App.4th 494, 500-501 [same].)

omission referred to"]; see *People v. Cervantes* (2009) 175 Cal.App.4th 291, 293-295 [reversing trial court finding of a willful probation violation when defendant was in the custody of immigration officials at the time of his review hearing]).

We review the trial court's finding under the substantial evidence test. (*People v. Rabanales*, *supra*, 168 Cal.App.4th at p. 509.)  That is, " 'the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination.' " (*Ibid.*)

The parties do not cite a *Cruz* waiver case involving a court's reliance on an attorney representation, nor have we found one in our own research. Nonetheless, we conclude the trial court could rely on the prosecutor's representation for two reasons:  first, the rules of evidence in sentencing matters are more relaxed than at trial and, second, attorney representations have been treated as tantamount to evidence in circumstances analogous to those before us.

The California Supreme Court has explained, "Once guilt has been determined, evidence which would be inadmissible on the issue of guilt may nevertheless be received as bearing on the punishment to be imposed. (*Williams v. New York* (1949) 337 U.S. 241 [93 L. Ed. 1337, 69 S. Ct. 1079].)" (*People v. Peterson* (1973) 9 Cal.3d 717, 725.)  The *Peterson* court observed, "In *Williams* the Supreme Court rejected claims that a convicted man was deprived of due process by procedural practices where the sentencing judge relied on information not obtained through formal proceedings from persons whom the defendant had not been permitted to confront or cross-examine.  In so concluding the court distinguished evidentiary procedural limitations applicable to the guilt-determining processes from those applicable to

5

hearings relating to the fixing of punishment after a determination of guilt has been made, and noted the existence of a policy predating the Constitution whereby a sentencing judge 'could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.' " (*Ibid*.) "The [*Williams*] court concluded that the 'due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure.' " (*Id*. at p. 726; see *People v. Hall* (2019) 39 Cal.App.5th 831, 836, 840 [permitting the court's consideration of reliable "unsworn hearsay" in a probation report in a resentencing proceeding].)

Further, courts in multiple contexts have considered attorney representations to courts worthy of consideration, with two courts stating that they are "tantamount to sworn testimony." (*People v. Wolozon* (1982) 138 Cal.App.3d 456, 460, fn. 4, citing *People v. Laudermilk* (1967) 67 Cal.2d 272, 286.) " '[A]ttorneys are officers of the court, and " 'when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.' " ' " (*People v. Mroczko* (1983) 35 Cal.3d 86, 112, quoting *Holloway v. Arkansas* (1978) 435 U.S. 475, 485-486, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Thus, in *People v. Smith (*2003) 30 Cal.4th 581, our Supreme Court, in the course of determining whether the trial court had correctly concluded a witness was unavailable for trial, indicated that "[t]he prosecution met its burden of showing due diligence" (*id*. at p. 611), in part based on the prosecutor's "representation as an officer of the court" without the court "requiring him to testify formally." (*Id*. at p. 608.) The court concluded that, although such "information may have been legally incompetent" for other

purposes, "it sufficed to show that the prosecution made reasonable efforts to locate" a missing witness. (*Id.* at p. 611.)

In *People v. Mirenda* (2009) 174 Cal.App.4th 1313, the court, in evaluating whether defendant was prejudiced by a long delay in trial, recognized certain representations by counsel as "credible evidence." (*Id.* at p. 1332.) The court pointed out that " ' "[a]ttorneys are officers of the court, and ' "when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath[.]" ' " ' " (*Ibid.*, citing *People v. Mroczko, supra*, 35 Cal.3d at p. 112).

Similarly, in *People v. Medina* (1995) 11 Cal.4th 694, our Supreme Court in reviewing a trial court's decision to shackle a defendant during the competency phase of proceedings, rejected the contention that "the prosecutor's uncontested statement cataloguing defendant's prior violent conduct in and out of the courtroom" did not provide evidentiary support for its ruling. (*Id.* at p. 731.) The court concluded that "[t]he prosecutor was an officer of the court whose representations of fact, made without objection or rebuttal by defendant, properly could sustain the court's ruling." (*Ibid.*)

Based on this case law, we conclude White's argument that the court could not rely on the prosecutor's representation to find that White had willfully failed to appear for sentencing is without merit. The prosecutor's representation, albeit hearsay and not under oath, was made in a sentencing proceeding, in which reliable, unsworn hearsay is regularly considered. The representation itself was very reliable, both because the prosecutor was an officer of the court and because he was reporting on his own review of a government database. The court's reliance on it is consistent with the case law we have discussed.

## DISPOSITION

The sentence appealed from is affirmed.

_____

STEWART, J.

We concur.

_____

RICHMAN, Acting P.J.

_____

MILLER, J.

*People v. White* (A158708)

9